UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID SUTTON, JR.,

     **Plaintiff,**     **CIVIL ACTION NO. 8-CV-13182**

  **vs.**         **DISTRICT JUDGE VICTORIA A. ROBERTS**

**COMMISSIONER OF**     **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

     **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**  **RECOMMENDATION:**  This Court recommends that Defendant's Motion for Summary Judgment (docket no. 23) be GRANTED, that Plaintiff's Motion for Summary Judgment (docket no. 18, 24) be DENIED, and the instant complaint DISMISSED as there is substantial evidence on the record that claimant remained capable of performing a significant number of jobs in the economy.

           ***

**II.**  **PROCEDURAL BACKGROUND**

   Plaintiff filed an application for Supplemental Security Income (SSI) with a protective filing date of September 29, 2004, alleging that he had been disabled and unable to work since December 1, 1983 due to mental illness, a herniated disc at L4-L5 and hypertension. (TR 115-18, 123-24, 130, 139). Plaintiff's claim was initially denied. (TR 53-56). Following two hearings, held on June 8, 2006 and September 28, 2006, both of which Plaintiff declined to attend, Administrative Law Judge Melvyn B. Kalt (ALJ) denied Plaintiff's claim in a decision dated February 7, 2007 finding that claimant was not entitled to SSI because he was not under a disability at any time from September

1

29, 2004[1]. (TR 12-13, 25-26, 408, 417). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 6-7). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record[2].

As an initial matter, the ALJ must adopt the findings regarding the demands of Plaintiff's past relevant work, Plaintiff's date of birth and Plaintiff's education or work experience from the Commissioner's prior July 16, 2003 decision unless there is new and material evidence relating to the finding or there has been a change in the law, regulation or rule affecting the finding. AR No. 98-3(6); *see also Dennard v. Sec'y of Health and Human Servs.*, 907 F.2d 598 (6th Cir. 1990).

By way of background, the July 16, 2003 decision stems from a 2002 decision to reopen Plaintiff's prior disability claim. Plaintiff applied for and received Disability Insurance Benefits for an open period beginning on June 23, 1983 by a decision dated January 21, 1985. "In March of 2002, the Social Security Administration Office of Inspector General produced an investigative report detailing the evidence used against [Plaintiff] Sutton by the United States Attorneys Office which had convicted [Plaintiff] Sutton of bankruptcy fraud." *See Sutton v. Comm'r of Soc. Sec.*,

---

[1] Plaintiff cannot be paid SSI for the month in which he filed his application or any months prior to that month. 20 C.F.R. § 416.335.

[2] The Court notes that Plaintiff's 31-page Brief in Support of his Motion for Summary Judgment far exceeds the 20-page limit for briefs. E.D. Mich. 7.1(c). Similarly, Plaintiff's 20-page Reply Brief far exceeds the 5-page limit. E.D. Mich. 7.1(c). Plaintiff has not sought leave to exceed these page limits and it appears to be an oversight by this Court that neither brief was stricken for failure to comply with the Eastern District of Michigan Local Court Rules. Due to the lengthy procedural history in this matter, and the time that has elapsed since the filing of these documents, the Court will proceed with the Motions for Summary Judgment and Plaintiff's Reply in this matter.

The Court notes that it has also considered Plaintiff's Errata Notices related to his Summary Judgment Motion and Reply in Opposition to Defendant's Motion For Summary Judgment. (Docket nos. 19, 25).

Order No. 06-2100 (6th Cir. Mar. 22, 2007). Based on this investigative report, the Administrative Office of Central Operations recommended reopening Plaintiff's disability claim. *See id.* at 2. On September 4, 2002 Plaintiff's prior hearing decision was vacated and remanded for further proceedings based on Plaintiff's depositions in connection with the bankruptcy proceeding in which Plaintiff had admitted that he was the Chief Executive Officer and owner of a candy company which had been in operation for sixteen years and earned over $100,000.00 in each of those years. (TR 32, 267-345).

In a decision dated July 16, 2003 Administrative Law Judge Alfred H. Varga found that Plaintiff had "filed for bankruptcy based upon companies that he owned and operated while collecting Title II disability benefits." (TR 38). Judge Varga correctly concluded that Plaintiff had "consistently stated to the Social Security Administration that he had not engaged in any work activity after June 23, 1983." (TR 38). Judge Varga found that Plaintiff "worked as the Chief Executive Officer of Sutton Candy Manufacturing Company since 1981 and continued through June 23, 1983, his alleged disability onset date and at least through 1997." (TR 42). Judge Varga found that this work activity constituted "'substantial gainful activity' within the meaning of the Social Security Act and Regulations (20 CFR 404.1572 and 416.975)" and Plaintiff was not under a disability on June 23, 1983 through 1997. (TR 42-43). This Court held that the ALJ's decision was supported by substantial evidence. *See Sutton v. Comm'r of Soc. Sec.*, No. 05-cv-70207 (E.D. Mich. July 24, 2006) (Docket nos. 45, 48). The Sixth Circuit Court of Appeals affirmed this Court's decision and the United States Supreme Court denied Plaintiff's petition for a writ of certiorari. *See Sutton v. Comm'r of Soc. Sec.*, No. 06-2100 (6th Cir. Mar 22, 2007), *cert. denied*, 128 S.Ct. 452 (2007). Judge Varga's decision became a final decision of the Commissioner. 20 C.F.R. § 416.1481.

The ALJ properly included language in his decision indicating which of Judge Varga's findings he found binding. The ALJ applied collateral estoppel to Judge Varga's finding that the "claimant had engaged in substantial gainful activity (SGA) through at least 1997." (TR 14).

## III.    PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A.    Plaintiff's Testimony and Reports

Plaintiff was fifty-five years old at the time of the ALJ's decision. (TR 9, 115, 139). Plaintiff has four years of college education. (TR 24, 128). Plaintiff reported past work experience in administration and as a teacher. (TR 131). Plaintiff reported in his December 6, 2004 Disability Report that he stopped working "because of disability." (TR 130).

In his Function Report dated February 9, 2005, in response to a directive to "[d]escribe what you do from the time you wake up until going to bed," Plaintiff reported "look out the window and cry." (TR 142). Plaintiff reported that his sleep is disturbed by "mental and physical agitation- pain, decreased energy, causes (sic) paranoid thinking, thoughts of suicide, and worthlessness." (TR 143). Plaintiff reported that his personal care tasks are restricted "because of disc," loss of interest and lack of energy. (TR 143). Plaintiff reported that he cannot prepare his own meals because he has difficulty concentrating and remembering, he has a lack of energy and loss of interest, he "can't stand" and he suffers from agitation. (TR 144). Plaintiff reported that he does not perform house or yard work because he is restricted due to his disc problem, he has a loss of interest and lack of energy and agitation. (TR 145). He does not drive due to paranoid thinking, difficulty concentrating and thinking and his disc problem. (TR 145). He reported that he can use public transportation and ride in a car. (TR 145). He reported being able to pay bills and handle a savings account. (TR 145).

Plaintiff reported that he can lift between two and five pounds, walk a short distance and sit

4

for a "short" period of time.  (TR 147).  He can walk "not far" before he has to stop and rest for "a while."  (TR 147).  He reported that he can perform no squatting, standing, reaching, kneeling, or talking and is "limited" in his ability to climb stairs.  (TR 147).  He reported that he can pay attention for "not long," follow written  and spoken instructions "not well" and has difficulty with concentration.  (TR 147).  He reported that his ability to complete tasks and get along with others is poor.  (TR 147).  He reported using a cane and brace for walking and alleges that these were prescribed by a doctor in 1983.  (TR 148).

In December 2004 Plaintiff reported that he took Zoloft for depression, Avalide for hypertension, Effexor for depression and paranoia and Lexapro for insomnia.  (TR 135).  Plaintiff reported that he had "yawning" and "gas" as a side effect from the Effexor and "yawning" as a side effect from the Lexapro.  (TR 135).  In May 2005 Plaintiff reported that he was taking Zoloft for depression, Aceon for hypertension, Tylenol for back pain, Celexa for anxiety disorder and paranoia, Avalide, Flexeril and Naprosyn.  (TR 153, 160).  Plaintiff reported the following side effects: confusion from Zoloft, "memory" from Tylenol, anxiety from Avalide and nervousness from Aceon.  (TR 160).  In May 2006 Plaintiff listed his medications as Valium, Perofen, Tylenol #4, Motrin 800 mg., Vasorce (sic), Flexeril, Darvocet, Prinivil, MS Contin SR, Lozol, Zoloft, Effexor, Lekama (sic) and Lipitor.  (TR 166).

**B.    Medical and Record Evidence**

On October 21, 2002 Plaintiff underwent assessment at Oakland Psychological Clinic, P.C. (TR 194-200).  Sally Cahill, M.S.W., noted that Plaintiff reported that his daily activity was reading the Bible.  (TR 196).  Ms. Cahill noted that Plaintiff was divorced in March, 2002 after thirty-one years of marriage, and Plaintiff's two sisters had died in a car accident one year prior.  (TR 196).  Ms. Cahill noted that Plaintiff "wept throughout the session."  (TR 198).  Ms. Cahill diagnosed

5

Dysthymic Disorder (300.4) and noted to rule out Major Depression. (TR 198).

Shuja Haque, M.D.,completed an October 22, 2002 Psychiatric Assessment. (TR 190-92). Dr. Haque noted that Plaintiff was referred by Court order. (TR 190). Dr. Haque diagnosed Plaintiff with Dysthymic Disorder, noted to rule out Major Depression and prescribed Celexa. (TR 192-93).

Ms. Cahill completed a Discharge Summary and Aftercare Plan dated February 5, 2004. (TR 189). Ms. Cahill noted that Plaintiff was "depressed over the finalization of his divorce . . . and also very upset over legal problems." (TR 189). She noted that Plaintiff "was seen over the course of a year for individual therapy" and he was "on probabation for bankruptcy fraud and was facing the possibility of 6 month house confinement on a tether." (TR 189). She noted that his primary problem was depression and he "complained often of feeling suicidal." (TR 189). She noted that he was being discharged because he could not afford therapy and she had noted "some improvement" in his mood. (TR 189).

The record contains a report from an August 23, 2004 counseling session with psychologist Charles Spinazola, Ph.D., at Milan FCI. (TR 203). Dr. Spinazola recommended that Plaintiff obtain a psychiatric consultation and continue psychotherapy after his release from prison. (TR 203). Thomas Tsai, M.D., psychiatrist, completed a Psychiatric Review Technique dated February 21, 2005. (TR 170-83). Dr. Tsai noted that there was insufficient evidence to make a medical determination. (TR 170).

Plaintiff underwent an echocardiograph on January 27, 2004. (TR 1865). Dr. Randal Reher, M.D., F.A.C.C., concluded that the exam showed "minimal, concentric left ventricular hypertrophy with normal chamber size and preserved overall systolic function" and an "estimated ejection fraction" of 60%. (TR 186). Dr. Richter also noted "mild aortic sclerosis without stenosis" and the mitral valve has "mild mitral annular calcification but opens well." (TR 186). Color flow and

6

doppler imaging revealed "mild tricuspid and mild mitral regurgitation only." (TR 186). A March 4, 2006 echocardiography exam revealed only reduced left ventricular function, ejection fraction of left ventricle estimated around 35-40% and abnormal relaxation of the left ventricular evidenced by abnormal E/A ratio in the mitral value diastolic flow. (TR 384).

Laina Feinstein, M.D., completed a state agency Medical Examination Report dated April 5, 2005. (TR 201-02). Dr. Feinstein noted that Plaintiff suffers from lumbosacral radiculopathy and depression. (TR 201). She noted that she had treated Plaintiff from October 15, 2002 to his last examination on March 30, 2005. (TR 201). Dr. Feinstein noted that Plaintiff had decreased straight leg raising in the left leg, decreased range of motion in the lumbar spine and decreased mood. (TR 201). Dr. Feinstein's opinion regarding Plaintiff's limitations is set forth in detail in the analysis below.

Plaintiff underwent an MRI of the lumbar spine on January 14, 2006, which revealed a "large broad-based 5 X 12 MM disc herniation at L4-5 with some disc material extending to the inferior aspect of the right intervertebral foramina" and "some compression of the nerve root entrance to the left side of the L4-5." (TR 204). The radiologist further noted a "disc bulge identified at L5-S1 with suggestion of narrowing of the bilateral intervertebral foramina by disc material" and "minimal disc bulge identified at L3-4." (TR 204).

Plaintiff submitted medical documents to the Appeals Council and this Court following the ALJ's decision. These documents will be discussed below in an analysis regarding whether a sentence six remand is required. (TR 396-407A).

### C.    Vocational Expert Testimony

The ALJ held two hearings in this matter. The first hearing was held on June 8, 2006. (TR 408). A Vocational Expert (VE) testified at the hearing. (TR 410). The VE noted that she did not

have written documentation of the specific job duties Plaintiff performed as the owner of a business known as Sutton Candy Company.  (TR 411).  The VE testified as to the job duties based on her own work experience and the Dictionary of Occupational Titles (DOT).  The VE testified that owning or managing a retail store, such as a candy store, would be skilled work.  (TR 411).  The VE testified that as a result of Plaintiff's college degree, it was possible that there would be some "additional business management acumen or savvy that could transfer to some other business administrators also at the sedentary and/or at the light exertional level."  (TR 412).  The VE testified that ownership of a candy manufacturing company would be a skilled occupation and could be performed at the sedentary exertional level if he were allocating duties to subordinate personnel.  (TR 413).  A manager or owner involved in the day to day activities of the manufacturing process itself would "typically" perform work at the light exertional level.  (TR 413).

The ALJ asked the VE to consider Dr. Feinstein's residual functional capacity, which the VE clarified to include the ability to stand and/or walk less than two hours, but potentially as much as one hour each, and sit for less than six hours, with no specification as to how much less than six hours, and lift and/or carry less than ten pounds.  The VE testified that if Plaintiff has skills transferrable to business management and administration positions, inventory clerk or other business clerks such as production clerks, at the sedentary level, then the RFC is consistent with these occupations.  (TR 415).  The VE testified that her testimony is consistent with the DOT.  (TR 415).

The ALJ held a supplemental hearing on September 28, 2006 at which the VE again testified and Plaintiff failed to appear.  (TR 419).  The VE pointed to evidence in the record where Plaintiff stated that he had worked close to sixty hours per week in the candy company.  (TR 246, 421).  The VE classified it as skilled work performed at the light exertional level, based on the number of hours Plaintiff worked per week, the multiplicity of duties he handled, the fact that he performed

8

management supervision of hourly workers, handled the finances and had some idea of how to process financial information, despite payroll being handled by an outside company. (TR 245, 421).

The ALJ asked the VE to consider an individual capable of performing work that does not require lifting more than ten pounds and does not require being "on his feet for more than six hours in an eight hour day but would allow him to sit for two hours during an eight hour day." (TR 417, 428-29). The ALJ asked whether there was any work which would reasonably follow from the work which the individual had performed in owning and operating any of three businesses that the record supports, including candy store, candy manufacturing or bar. (TR 428-29). The VE testified that there are jobs existing at the light exertional level in the Detroit metropolitan area that such an individual can perform. Those jobs include warehouse supervisors or packaging supervisors (5,600 jobs in the metropolitan area, 11,000 jobs in the state). (TR 429). The VE further testified that although the jobs are classified as light exertion, they do not require lifting more than ten pounds. (TR 429).

The AJL then asked the VE to consider that if Plaintiff were able to perform the full range of light work, whether he could return to many of the facets of his prior work. (TR 431). The VE then testified to job titles which were secondary to Plaintiff's past relevant work, including sales representative food product, warehouse supervisors, packaging supervisors, production supervisors, order clerks and inventory clerks. (TR 431-32). The VE testified that these jobs were all semi-skilled. (TR 432).

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since September 29, 2004 and suffered from dysthymic disorder, L4-L5 disc herniation and hypertension, he did not have an impairment or combination of impairments that meets or medically equals the

Listing of Impairments. (TR 17). The ALJ found that Plaintiff lacks any credibility and he retains the ability to perform jobs encompassed in his past relevant work that are not precluded by Plaintiff's Residual Functional Capacity (RFC) for a limited range of light work. (TR 24). The ALJ concluded that there are jobs that exist in a significant number in the national economy that Plaintiff can perform and he has not been under a disability at any time since the September 29, 2004 protective filing date of his application. (TR 26).

## V.    LAW AND ANALYSIS

### A.    Standard Of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial

10

evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.     Analysis

*1.     Scope of the Court's Review*

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)     he was not presently engaged in substantial gainful employment; and

(2)     he suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. § 416.920(a)-(f) (2009).  If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider his residual functional capacity ("RFC"), age, education and past work experience to determine if he could perform other work.  If he could not, he would be deemed disabled. *See id*. § 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

11

Plaintiff objects to certain evidence in the record and argues that the Appeals Council did not give appropriate weight to medical evidence submitted after the ALJ's decision, the ALJ erred at step three when he failed to find that Plaintiff met Listing 1.04(A), the ALJ's RFC including mental limitations was not supported by substantial evidence, the weight given to Plaintiff's treating physician's opinion is not supported by substantial evidence,  the ALJ's credibility determination is not supported by substantial evidence and the ALJ's findings at step five are not supported by substantial evidence because the hypothetical question to the VE did not accurately include Plaintiff's impairments and there is a conflict between the VE's testimony and the Dictionary of Occupational Titles (DOT) and the regulations governing the transferability of skills.  (Docket no. 18).

**2.      *Plaintiff's Objections to Evidence in the Record***

Plaintiff objects to the inclusion in his record of Exhibits C-7F through C-12F.  (Docket no. 18).  Among Plaintiff's arguments are that these depositions and Bankruptcy Court documents are hearsay, Plaintiff argues collateral estoppel and re judicata, argues that "information derived under grand jury authority may not be used in civil proceedings," and argues that he "has a 5th amendment right to have his claim determined on non-hearsay evidence."  (Docket no. 18).

The Regulations define "evidence" as anything you or anyone else submits to use or that we obtain that relates to your claim." 20 C.F.R. § 416.912(b).  "The Social Security Act specifically provides that '[e]vidence may be received at any hearing before the Secretary even though inadmissible under rules of evidence applicable to court procedure.' 42 U.S.C. § 405(b)(1) (1983)." *Tyra v. Secretary of Health and Human Services*, 896 F.2d 1024, 1030 (6th Cir. 1990) ("relevant evidence not admissible in court, including hearsay, is admissible at an administrative hearing").

The documents to which Plaintiff objects were also evidence in Plaintiff's prior Social

Security Claim and the Commissioner's decision dated July 16, 2003, affirmed by this Court and the Court of Appeals finding that Plaintiff was engaged in substantial gainful activity from the time of his prior alleged disability onset date of June 23, 1983 through 1997, despite his statements to the contrary. (TR 38); *See Sutton v. Commissioner of Social Security*, Order No. 06-2100 (6th Cir. Mar. 22, 2007). The ALJ properly considered all of the evidence of record.

3.    ***Whether Documents Submitted To The Appeals Council And This Court Are New And Material Evidence***

Plaintiff has submitted numerous documents to both the Appeals Council and this Court, which were not submitted to the ALJ prior to the ALJ's decision. (TR 396-407A). As an initial matter, the record shows that the ALJ contacted Plaintiff on multiple occasions to secure his cooperation and participation in the administrative process and gathering evidence. The Regulations provide that:

> You . . . must co-operate in furnishing us with, or in helping us to obtain or identify, available medical or other evidence about your impairment(s). When you fail to cooperate with us in obtaining evidence, we will have to make a decision based on information available in your case. We will not excuse you from giving us evidence because you have religious or personal reasons against medical examinations, tests, or treatment. 20 C.F.R. § 416.916.

Plaintiff made multiple attempts to request a reconsideration of the denial of his claim without a hearing. The record contains a Waiver of Your Right To Personal Appearance Before An Administrative Law Judge, bearing the signature "David Sutton" and dated February 7, 2006. (TR 60). The ALJ notified Plaintiff by letter dated March 30, 2006 that "notwithstanding your request for an on the record decision, I have determined that a hearing in this matter must be scheduled because there are areas that need to be investigated further." (TR 98). The ALJ then set forth three specific areas of inquiry and evidence for which the ALJ needed Plaintiff's attendance at the hearing. (TR 98). The ALJ's notice further advised Plaintiff that "should you not appear at the

hearing, adverse presumptions regarding your credibility and the weight of the evidence may be made." (TR 98).

The ALJ noticed a hearing for April 26, 2006 and Plaintiff sent a letter dated April 17, 2006 asking that the hearing be adjourned while he obtained counsel. (TR 169). The hearing was rescheduled and noticed for June 8, 2006 and Plaintiff sent a letter dated May 30, 2006 indicating that due to his medical impairments he would not attend the hearing. (TR 168). The ALJ informed Plaintiff by letter dated June 5, 2006 that the hearing would be held as scheduled on June 8, 2006 and set forth specific reasons for the same. (TR 99). The ALJ held the hearing on June 8, 2006 and took the testimony of the VE.

Following the June 8, 2006 hearing, the ALJ attempted to obtain additional evidence regarding Plaintiff and sent a letter to Plaintiff dated July 20, 2006 asking him to sign and return the enclosed Authorization to Disclose Information. (TR 100). The ALJ alleges that Plaintiff did not return the Authorization. (TR 101). Plaintiff sent a letter dated September 13, 2006 revoking "any authorization to disclose information to the 'SSA.'" (TR 101).

In yet another attempt to secure additional evidence regarding Plaintiff's claim, the ALJ noticed a supplemental hearing on September 28, 2006. Plaintiff sent a letter dated September 22, 2006 stating that he would not attend the hearing because he "continues to suffer chronic disabilities, both physical and mental" and again asking to waive his right to appear. (TR 102-104).

The record shows that on October 23, 2006 the ALJ ordered a consultative internal medicine evaluation and a mental status evaluation of Plaintiff. (TR 108-09). Plaintiff refused to attend either evaluation and provided a letter stating that he would prefer his "treating source to perform these consultative examinations." (TR 110). The ALJ sent a letter dated October 26, 2006 asking Plaintiff to provide the name and address of his "primary physician with a signed authorization to release

14

medical information" so that the ALJ could request the consultative examination be performed by Plaintiff's primary physician, as Plaintiff had requested. (TR 107). The ALJ noted that as of the date of his February 7, 2007 decision, Plaintiff had not complied with the request. (TR 13). Plaintiff's correspondence is also infused with his objections to the evidence of record. These objections are without merit, as set forth above. (TR 112-13).

The ALJ gave Plaintiff numerous opportunities to provide testimony and evidence of his alleged impairments including consultative examinations by his own physicians and Plaintiff refused to cooperate. The ALJ properly made a decision based on sufficient evidence of record. *See generally Levy v. Astrue*, 2008 WL 4743518 (S.D. Fla., Oct. 28, 2008) ("[T]he instant record was sufficiently developed . . . based on the medical information available in the record at the time the ALJ made his decision, the numerous opportunities provided to Claimant to give her testimony . . ., the length of time that the record was left open to allow Claimant to provide evidence . . ., Claimant's failure to attend her consultative examination, and Claimant's lack of cooperation in providing evidence of her alleged impairments.").

With respect to the additional documents submitted by Plaintiff to the Appeals Council and this Court, the "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing Richardson*, 402 U.S. at 401). The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The

15

party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357 (*citing Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)).

"'[E]vidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding.'" *Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483-84 (6th Cir. 2006) (citations omitted). "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711 (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993) ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material.")(emphasis added)(citations omitted). "Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt*, 974 F.2d at 685 (*citing Sizemore*, 865 F.2d at 712).

The record of the January 14, 2006 MRI is a duplicate, it is already contained in the record and the information is not new. (TR 204, 397). The radiology report dated November 5, 1984 reports a CT scan of Plaintiff's lumbar spine. (TR 396). There is more current information and testing in the record regarding Plaintiff's lumbar spine and the record shows that L4-L5 reveal findings "compatible with herniated nucleus pulposis." (TR 396). This information is neither new nor material. (TR 396).

The documents also contain emergency room records from December 24, 2005 when

Plaintiff reported to the emergency room with complaints of back pain radiating into the left leg. (TR 398-404).  Plaintiff denied numbness or tingling.  (TR 399).  He was given Norflex and Dilaudid and released the same day.  (TR 399, 400).  The treatment provider noted that Plaintiff complained of chronic back pain and noted a history of a herniated disc.  (TR 403-04).  These records are not new because they were in existence at the time of the Administrative Hearing. The records are not material.  They do not provide test results, diagnosis or limitations or restrictions not already found in other records which were before the ALJ.  There is no evidence which, if considered by the ALJ, would have a reasonable probability of causing the ALJ to reach a different conclusion regarding Plaintiff's disability.   Finally, Plaintiff has not shown good cause for failing to produce the emergency room records, or any of the other documents which were in existence prior to the ALJ's February 7, 2007 decision in this matter.  (TR 26).

Similarly, Farnaz Abhari's Medical Examination Report dated September 6, 2006 is not new because it is dated prior to the ALJ's supplemental hearing on September 28, 2006.  (TR 13, 405-06).  Dr. Abhari's Medical Examination Report noted that Plaintiff is blind in his left eye by "history" and Dr. Abhari noted that he did not have records related to the same.  (TR 405).  Dr. Abhari also noted that Plaintiff uses a cane, has back pain and concluded that Plaintiff may never lift any weight, including less than ten pounds.  (TR 405-06).  The document is otherwise unsupported by objective medical evidence or testing or accompanying treatment notes.

Plaintiff also submitted an unsigned letter from Ronald H. Bergman, M.D., at the Bergman Porretta Eye Center, dated February 13, 2007 which states that Plaintiff "has a history of poor vision in his left eye for many years," and that Plaintiff "gives a history of trauma to the left eye approximately 40 years ago."  (TR 407).  Dr. Bergman noted that Plaintiff has a "best-corrected visual acuity of 20/20 in the right eye and no light perception on the left," and a left esotropia.  (TR

17

407).

The evidence regarding Plaintiff's left eye is not new, the information about this historic injury and the fact of Plaintiff's poor left eye vision was available to Plaintiff well before the ALJ's hearings and decision in this matter. Plaintiff did not note this condition in his Disability Report as an illness, injury or condition which limits his ability to work. (TR 123, 130). This evidence is not new. Furthermore, there are no exam results or other objective medical evidence supporting this condition and there is no evidence that it limits Plaintiff's ability to work. In a similar matter, the Sixth Circuit Court of Appeals upheld an ALJ's denial of disability benefits and found that the plaintiff's "blindness in one eye has little effect on the disability determination given his past work history." *Auer v. Sec'y of Health and Human Servs.*, 830 F.2d 594, 596 (6th Cir. 1987). Here, a final decision of the Commissioner finds that Plaintiff engaged in substantial gainful activity from 1981 through 1997. (TR 42). Dr. Bergman's letter notes that Plaintiff suffered the eye trauma approximately 40 years ago. Therefore, despite Plaintiff's arguments that he has not engaged in work at the candy company, Plaintiff by his own report engaged in work as an administrator until 1982, well after sustaining the eye injury. (TR 131). The evidence is not material because there is no reasonable probability that the ALJ would have reached a different conclusion on Plaintiff's claim if he had this evidence. The evidence is not supported by objective medical evidence or even treatment notes. Plaintiff has not shown good cause for failing to produce this information, Plaintiff merely argues that it was "unavailable" to him. (Docket no. 24 at 19 or 21).

The evidence submitted by Plaintiff to the Appeals Council and this Court with Plaintiff's Complaint is neither new nor material for the reasons set forth herein. Plaintiff has not shown good cause for failing to provide this information prior to the ALJ's hearings or the ALJ's decision, despite repeated opportunities to provide additional evidence. The Court should deny Plaintiff's

request for a remand for consideration of this evidence.  42 U.S.C. § 405(g).

**4.      *Whether the ALJ's Finding That Plaintiff Does Not Meet The Listing Is Supported By Substantial Evidence***

Plaintiff argues that the ALJ's finding that he does not meet Listing 1.04(A) is not supported by substantial evidence.  (Docket no. 18 at 12 of 36).  "It is a claimant's burden at the third step of the evaluation process to provide evidence that she [or he] meets or equals a listed impairment."  *Blanton v. Soc. Sec. Admin.*, 118 Fed. Appx. 3 at *6 (6th Cir. Sept. 20, 2004).

Plaintiff argues that he meets the criteria for Listing 1.04(A), which involves disorders of the spine.  Disability under Listing 1.04(A) requires evidence of nerve root compression characterized by "neuro-anatomic distribution of pain, limitation in motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."  20 CFR Pt. 404, Subpt. P, App. 1 §1.04(A).

The ALJ relied on a January 2006 MRI which revealed a disc herniation at L4-L5 and some compression of the nerve root entrance to the left side of L4-L5.  (TR 20, 204).  The ALJ also pointed out Dr. Feinstein's April 5, 2005 note that Plaintiff had positive left straight leg raising and a decreased range of motion in the lumbar spine.  (TR 19-20, 201-202).  Dr. Feinstein noted that other examination areas were normal, including the neurological areas of sensory and reflex.  Dr. Feinstein did not note any atrophy or weakness, and there is no evidence elsewhere in the record of muscle weakness, atrophy or sensory or reflex loss within the relative time period.

Given this evidence, the ALJ properly determined that Plaintiff's impairment was not equal in severity to Listing 1.04(A).  There is substantial evidence in the record showing that Plaintiff did not suffer the requisite motor loss and neurological deficits to meet section 1.04(A) of the Listing

of Impairments.

**5.      *Whether the ALJ Properly Assessed Plaintiff's Mental Impairment and Dr. Haque's Opinion***

Plaintiff argues that the ALJ "virtually ignored plaintiff's mental limitations" and improperly gave minimal weight to Dr. Haque's opinion. (Docket no. 18 at 29 of 36). The record shows that both Dr. Haque and Ms. Cahill treated and/or examined Plaintiff through the Oakland Psychological Clinic, P.C., and the ALJ cited extensively to the records from this clinic. (TR 21-22, 189-200).

The ALJ pointed out that Dr. Haque had prescribed Celexa in October 2002. The ALJ cited the diagnosis of dysthymic disorder and found that Plaintiff suffers from this condition. The ALJ also pointed out that the physician who completed the October 22, 2002 Psychiatric Assessment noted that Plaintiff had a GAF of 60. (TR 22). The doctor to whom the ALJ cited appears to be Dr. Haque because the signature on the Assessment is the same as that on Dr. Haque's prescription dated October 22, 2002. (TR 193). Dr. Haque noted that Plaintiff's mood was anxious, and his affect was constricted/restricted but his attitude was cooperative, his thought process was logical, his thought content was appropriate, and he was fully oriented. (TR 191). The ALJ pointed out that Ms. Cahill reported that Plaintiff's thought content, speech and affect were normal, his memory was intact, he was fully oriented and his thought process was lucid and coherent, he was of average intelligence and his abstraction, judgment and insight were all intact. (TR 21, 195).

Despite Plaintiff's argument that the ALJ ignored his mental limitations and did not give proper weight to Dr. Haque's opinion, Plaintiff does not identify any evidence or opinion which supports a finding of greater mental limitations than those found by the ALJ, other than his own subjective reports. There is simply no objective medical evidence of record supporting mental

limitations[3].  The ALJ's findings regarding Plaintiff's mental limitations are supported by substantial evidence.

**6.     *Whether The ALJ Gave Proper Weight To Dr. Feinstein's Opinion***

Plaintiff argues that the ALJ's decision to discount Dr. Feinstein's opinion is not supported by substantial evidence and that the ALJ substituted his own medical judgment for that of Dr. Feinstein.  (Docket no. 18 at 26, 27 of 38).   It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference.  Under 20 C.F.R. § 416.927(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.  The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters*, 127 F.3d at 529-30.  However, dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner.  *See* 20 C.F.R. § 416.927(e).

As set forth above, Dr. Feinstein completed an April 2005 state agency Medical Examination Report and concluded that Plaintiff is limited to lifting less than ten pounds occasionally, can stand and/or walk less than two hours and sit less than six hours in an eight-hour work day, cannot operate foot or leg controls and is able to perform simple grasping, reaching, pushing, pulling and fine manipulation with both upper extremities.  (TR 202).  She noted that Plaintiff needs no assistive devices to ambulate, has no mental limitations and was taking Zoloft and Aceon.  (TR 202).

---

[3] The Court notes yet again that the ALJ made multiple attempts to obtain further evidence from Plaintiff.  Dr. Tsai concluded in his February 2005 Psychiatric Review Technique that there was insufficient evidence to find that Plaintiff had a mental impairment.  (TR 170)

Dr. Feinstein's limitations were more restrictive than the ALJ's. The ALJ noted that Dr. Feinstein had "essentially found that the claimant was, from a purely exertional point of view, incapable of performing any work on a sustained basis." (TR 22). The ALJ declined to adopt Dr. Feinstein's opinion regarding Plaintiff's limitations.

The ALJ correctly pointed out the length of the treatment relationship with Dr. Feinstein and noted Dr. Feinstein's report that she had first examined Plaintiff on October 15, 2002. *See* 20 C.F.R. § 416.927(d)(2)(i). There is no evidence in the record, however, regarding the frequency of the treatment relationship. The ALJ also pointed out that Dr. Feinstein's opinion was not supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.927(d)(2). In Dr. Feinstein's Medical Examination Report she noted straight leg raising decreased on the left but noted no motor, reflex or sensory abnormalities and no abnormalities in gait, stance, fatigue or pain level. (TR 201). The ALJ's decision that Dr. Feinstein's opinions regarding Plaintiff's limitations are not entitled to "controlling" weight is fully explained and supported by substantial evidence. *See* 20 C.F.R. § 416.927(d)(2).

**7.      *Whether The ALJ Properly Evaluated Plaintiff's Subjective Complaints And Credibility***

Plaintiff also argues that the ALJ failed to properly evaluate his subjective complaints. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence. *Id.; see also* SSR 96-7p; 20 C.F.R. § 416.529(c). Furthermore, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the

22

record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."  20 C.F.R. § 416.929(c)(2). In addition to objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Contrary to Plaintiff's allegations, the ALJ properly considered Plaintiff's credibility and his allegations of disabling pain.  The ALJ found that the objective medical evidence of record "does not document any totally disabling impairment lasting twelve month or more."  The ALJ considered the treatment of Plaintiff's conditions and for pain relief and noted that Plaintiff had received "little medical attention or treatment" for his hypertension and L4-L5 disc herniation.  (TR 17).  In considering Plaintiff's daily activities and noting inconsistent statements by the Plaintiff, the ALJ pointed out that despite Plaintiff alleging that he stopped working in December 1983, the prior final decision of the ALJ found at step one that Plaintiff had engaged in substantial gainful activity through at least 1997, which work Plaintiff continued to deny.  (TR 18, 42).  The ALJ also pointed out the inconsistency between Plaintiff's repeated insistence that he could not attend the hearing in this matter, yet a June 8, 2006 report from the State of Michigan Department of Corrections shows that Plaintiff "reports as instructed monthly." (TR 23, 120).

The ALJ noted that Plaintiff's behavior throughout the period of his claim application and process "reveals an individual who is quite apt and is able to concentrate and focus, such that he is able to communicate by letter and telephone on a rather consistent and regular basis, to bring to the attention of the undersigned and his staff, issues which according to him, are deficiencies and errors in the processing and disposition of his claim." (TR 23). The record before the Court including Plaintiff's multiple correspondence supports the ALJ's statement. The ALJ points out the inconsistency of this behavior with Plaintiff's allegation that he could not attend the September 28, 2006 hearing due to physical, mental and emotional conditions[1]. (TR 23).

The ALJ also noted that the probation report stated that Plaintiff was not currently working because "he has been receiving Social Security income as indicated by the Wayne County Probabation agent" and "[a]s of December 2003, the offender [Plaintiff] provided verification of Social Security income to the Wayne County Probation Department." (TR 23). The ALJ pointed out that Plaintiff was not receiving Social Security income either at the time of the ALJ's decision or in September 2003 and the ALJ contacted Plaintiff by letter dated July 20, 2006 and asked Plaintiff to provide a copy of the verification. (TR 100). The ALJ stated in the decision that Plaintiff did not provide a verification and that none could exist because Plaintiff's prior Social Security Income payments were stopped as of the date of Judge Varga's July 16, 2003 decision. (TR 23).

The Court also notes that Plaintiff deprived the ALJ of the opportunity to observe his demeanor at the hearing or to obtain additional medical records. See Kirk v. Sec'ty of Health and Human Servs., 667 F.2d 524, 538 (6th Cir. 1981) citing *Beavers v. Secretary of Health, Ed. &*

---

[1] The ALJ also characterized Plaintiff's refusal to attend the hearing as an attempt to "frustrate this process and prevent proper disposition of the matter." (TR 23).

24

*Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) ("Since credibility, especially with alleged pain, is crucial to resolution of the claim, the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" ).  For these reasons substantial evidence supports the ALJ's determination that Plaintiff's allegations, including those of disabling pain, are not credible.

**8.      *Whether The ALJ's RFC Is Supported By Substantial Evidence***

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence and fails to account for Plaintiff's mental limitations, does not address his inability to lift and did not include specific findings as to his capacity for walking, carrying, pushing/pulling, kneeling, stooping, disabling pain or crouching.  (Docket no. 18 at 24 of 36).

The ALJ determined that Plaintiff has the RFC to perform work that does not require him to lift more than ten pounds, does not require Plaintiff to "be on his feet for more than six of eight hours and would allow him to sit for two hours of an eight hour workday." (TR 17, 22).  The Court has addressed the ALJ's findings regarding Plaintiff's mental impairments and the lack of accompanying limitations above and finds that they are supported by substantial evidence.

The ALJ found that Plaintiff could sit for two hours per day and be "on his feet" for more than six of eight hours.  (TR 17, 22).  By the ALJ's explanation at the hearings, the limitation of Plaintiff being "on his feet" refers to the ability to stand and/or walk.  (TR 414, 428-29).  As set forth above, the ALJ's decision not to accept the opinion of Dr. Feinstein that Plaintiff has restrictions effectively rendering him disabled is supported by substantial evidence.  There is no evidence in the record supporting limitations greater than those found by the ALJ.  The ALJ's finding that Plaintiff is limited to lifting under ten pounds is supported in part by Dr. Feinstein's opinion, although the

25

ALJ has declined to adopt the "occasional" frequency limitation set forth by Dr. Feinstein.  The ALJ's RFC is supported by substantial evidence.

**9.      *Step Five Findings Are Supported By Substantial Evidence***

Plaintiff argues that the ALJ's hypothetical question to the VE did not adequately address Plaintiff's mental limitations.  In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record.  *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993).  As set forth above, the ALJ's findings with respect to Plaintiff's exertional and postural limitations and lack of mental limitations are supported by substantial evidence.

The ALJ's hypothetical question to the VE incorporated those limitations which the ALJ found credible and supported by the record.  The ALJ asked the VE to consider an individual who is able to perform work that does not require lifting more than ten pounds, does not require being "on his feet for more than six hours in an eight hour day but would allow him to sit for two hours during an eight hour day."  (TR 417, 428-29).  The limitations are consistent with the RFC.  The ALJ asked whether there was any work which would reasonably follow from the work which the individual had performed in owning and operating any of three businesses that the record supports including operating a candy store, claimant's candy manufacturing business or operating a bar.  (TR 428-29).  The VE testified that there are jobs existing at the light exertional level in the Detroit metropolitan area that such an individual can perform.  Those jobs include production supervisors (approximately 24,000 in the state and 12,000 in the metropolitan Detroit area) and warehouse supervisors or packaging supervisors (5,600 jobs in the metropolitan area, 11,000 jobs in the state).  (TR 429).

Before an ALJ may rely upon a VE's testimony, the ALJ must address any apparent unresolved conflicts between the jobs identified by the VE and the DOT's classification of those jobs.  *See* SSR 00-4p.  SSR 00-4p  places an affirmative duty upon an ALJ to: (1) ask the VE whether any conflicts exist between the expert's testimony and the DOT, (2) "elicit a reasonable explanation" for any such conflict, and (3) explain the resolution of the conflict.  *See* SSR 00-4p.

The VE testified that her testimony was not consistent with the Dictionary of Occupational Title and she provided a reasonable explanation and the basis for her testimony.  The VE explained that these jobs have an exertional requirement of ten pound maximum, yet are characterized as "light" due to the standing and/or walking, not the lifting[1].  (TR 429).  This distinction is consistent with the definition of "light" work as set forth in the Regulations, which states "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b).

 The VE clarified that the jobs to which she was testifying were listed at the light exertional level and that she understood that the ALJ was allowing Plaintiff "to be on his feet at ten pounds maximum and these are characterized as light usually because of the standing and/or walking, not necessarily the lifting . . . ."  (TR 429).  The VE clarified and the ALJ confirmed that Plaintiff can sit for more than two hours, which is not precluded by the ALJ's RFC.  (TR 430).   The VE further explained that her inconsistency with the DOT was because the DOT is a compendium of jobs and occupations and that her testimony was based on her own experience in how the Department of

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time," while light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(a), (b).

Labor compiles jobs for the DOT, including her having been asked to assist in the process several years prior. (TR 424-26). The VE also clarified that jobs requiring sedentary exertional level lifting are classified as "light" if they involve standing and/or walking[1]. The VE properly testified from her own experience regarding the listed jobs and any inconsistency with the DOT. *See Zarkowski v. Barnhart*, 417 F. Supp. 2d 758, 767 (D.S.C. 2006); *see also Sharp v. Barnhart*, 152 Fed. Appx. 503 (6th Cir. 2005). The ALJ properly relied on the VE's testimony.

Finally, Plaintiff argues that because he has a severe impairment, was 55 years old at the time of the hearing and limited to "sedentary work," the ALJ erred in not finding him disabled pursuant to the Grid at Pt. 404, Subpt. P, App. 2, 201.14. As a 55 year old, Plaintiff is considered an individual "of advanced age." 20 C.F.R. § 416.968(d)(4). The Regulations provide that "[i]f you are of *advanced age* (age 55 or older), and you have a severe impairment(s)that limits you to *sedentary* or *light* work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work (or you have recently completed education which provides for direct entry into skilled work) that you can do despite your impairment(s)." 20 C.F.R. § 416.968(d)(4). The ALJ found that Plaintiff can perform a limited range of light work and "has transferable skills to work at the light exertional level." (TR 24). The ALJ found that Plaintiff "is capable of performing jobs that were encompassed in his past relevant work," and the VE testified that the work performed in these jobs was skilled in nature. (TR 24, 421). Although the VE testified that she did not have enough information to determine whether

---

[1] The ALJ's reference in his decision to "the unskilled sedentary occupational base," appears to be a misstatement which is harmless error where the ALJ presented a hypothetical to the VE which incorporated Plaintiff's RFC and limitations, the VE provided testimony and a response based on the same on which the ALJ relied and the findings are otherwise consistent with Plaintiff's ability to perform the light level jobs with sedentary lifting, to which the VE testified. (TR 25).

28

Plaintiff had skills transferable to sedentary work, she was able to testify that he had performed skilled work at the light exertional level and she testified that light jobs which flowed from Plaintiff's past relevant work of running a business included production supervisor, warehouse manager or supervisor and packaging supervisors. (TR 413, 422, 423). The VE testified that the warehouse supervisor, packaging supervisor and production supervisor jobs are semi-skilled. (TR 432). Therefore, Plaintiff is not disabled despite his advanced age.

Substantial evidence supports the ALJ's reliance on the VE's testimony and the ALJ's finding that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (TR 25).

## VI.    CONCLUSION

After a careful examination of the record as a whole, the Court concludes that the ALJ's decision to deny benefits was supported by substantial evidence and there is insufficient evidence in the record for the Court to find otherwise. Defendant's Motion for Summary Judgment (docket no. 23) should be GRANTED, that of Plaintiff (docket no. 18, 24) DENIED and the instant complaint dismissed.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Sec'y*

*of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 27, 2009          s/ Mona K. Majzoub_____
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 27, 2009           s/ Lisa C. Bartlett_____
                                Courtroom Deputy