**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DAVID SUTTON, JR.,**

                **Plaintiff(s),**     **CASE NUMBER: 08-13182**
                                   **HONORABLE VICTORIA A. ROBERTS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY**,

                **Defendant(s).**
_____/

**ORDER**

**I.    INTRODUCTION**

This matter is before the Court on the parties' cross Motions for Summary

Judgment (Doc. #18 and Doc. #23).  The Magistrate Judge recommends that the Court

GRANT Defendant's motion and DENY Plaintiff's motion.

The Court **ADOPTS** this recommendation.

**II.    BACKGROUND**

Plaintiff David Sutton, Jr. was injured in a car accident on June 23, 1983.  On

January 21, 1985, ALJ Martin J. McManus ruled Plaintiff was disabled.

On September 4, 2002, ALJ Peter N. Dowd vacated the disability award, and

remanded for further proceedings, following new information presented during Plaintiff's

bankruptcy proceedings in 1997 that Plaintiff owned and operated a candy company for

16 years.

On July 16, 2003, ALJ Alfred H. Varga found Plaintiff was not disabled, at least

from June 23, 1983 through 1997.  Plaintiff's benefits ceased.

1

On September 29, 2004, Plaintiff filed an Application for Supplemental Security Income, alleging he was disabled and unable to work beginning December 1, 1983 due to mental illness, paranoia, herniated disc, and hypertension.  Plaintiff's claim was denied on April 4, 2005.  Plaintiff appealed.

ALJ Melvyn B. Kalt scheduled a hearing for April 26, 2006.  In a letter dated April 17, 2006, Plaintiff asked the ALJ to reschedule the hearing so he could retain counsel. The hearing was rescheduled for June 8, 2006.

In a letter dated May 30, 2006, Plaintiff said he could not attend the June 8th hearing due to his physical, mental, and emotional conditions.  The ALJ held the hearing on June 8, 2006.  Plaintiff was not present.

The ALJ scheduled a supplemental hearing for September 28, 2006 to obtain additional evidence.  Plaintiff said he was unable to attend the supplemental hearing due to his chronic physical, mental, and emotional disabilities.  According to Plaintiff, his primary physician said attending the hearing would cause additional complications.

The ALJ held the supplemental hearing on September 28, 2006.  Plaintiff was not present.

The ALJ submitted a decision on February 7, 2007.

## III.    STANDARD OF REVIEW

In the Social Security context, the district court reviews the decision of the Commissioner for a determination of whether the decision exceeds statutory authority or is arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990); *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987).  This Court must review the ALJ's decision to determine whether it is supported by "substantial evidence."  "Substantial evidence is more than a

scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard v. Sec'y*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way.  *Casey v. Sec'y of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).  This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  In other words, if the Commissioner's determination is supported by substantial evidence, it must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently.  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  The Court must only review the record that was before the ALJ and cannot review the evidence *de novo*, weigh the evidence, or make credibility determinations.  *Id.*

## IV.  ARGUMENTS

There are five factors the Social Security Administration uses to determine eligibility for benefits.  Plaintiff must establish that: (1) he is not presently engaged in gainful employment; (2) he suffered from a severe impairment; and (3) the impairment met or was medically equal to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 and was of sufficient duration.  If Plaintiff does not meet his burden at step three, he may still meet his burden at step four by proving he did not have the "residual functional capacity" ("RFC") to perform past work.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

If Plaintiff satisfies his burden, the burden shifts to the Commissioner for the fifth factor to show there is other work available in the economy that the claimant can perform.  *See* 20 C.F.R. §§ 404.1520(b)-(g).  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y*, 820 F.2d 777, 779 (6th Cir. 1987).  This substantial evidence may be in the form of Vocational Expert ("VE") testimony, but only if the hypothetical question posed to the expert accurately portrays the claimant's individual physical and mental impairments.  *Id.*

### A.     Plaintiff's Claims

Plaintiff claims he cries suddenly, is paranoid, afraid of authority figures, and has: (1) feelings of isolation and guilt; (2) mental and physical agitation; (3) impaired memory; (4) trouble concentrating, understanding, and following instructions; (5) illogical thinking; (6) decreased energy; (7) suicidal thoughts; (8) thoughts of worthlessness; (9) low energy; (10) low self-esteem; (11) no appetite; and (12) no interest in most activities.

Plaintiff claims he cannot groom or feed himself, stand "for long," climb a lot of stairs, use a toilet, prepare meals, do chores, drive, sleep, kneel, squat, bend, reach, socialize, or shop.

Plaintiff says he can only walk short distances "at times," and he cannot walk "far" before he has to rest "a while."

Finally, Plaintiff says he can only lift 2-5 pounds, and sit for a short period of time.

Despite his problems, Plaintiff can: (1) go outside alone (when he does not have suicidal thoughts); (2) use public transportation; (3) pay bills; and (4) handle a savings

4

account.

Plaintiff completed at least four years of college.  He says his past work experience includes employment as an administrator and teacher.

**B.    The ALJ's Findings**

**1.    June 8, 2006 Hearing**

The ALJ asked the VE to assume Plaintiff owned and operated a candy store and a candy manufacturing business.  The VE testified that those are skilled occupations.  Tr. 411-413.

The VE said that while she needs additional information to determine whether the skills Plaintiff used in those occupations transfer to another occupation, Plaintiff's education may have provided him business management skills he could transfer to another occupation at the sedentary and/or light exertional levels.  Tr. 412.

According to the VE, if Plaintiff was the President of the company who allocated duties to subordinate personnel, he performed work at the sedentary exertional level.  If Plaintiff was involved in the day-to-day activities of the business, the VE said Plaintiff performed work at the light exertional level.  Tr. 413.

Dr. Laina Feinstein, a doctor with the State of Michigan Family Independence Agency, prepared a Medical Examination Report on April 5, 2005.  Dr. Feinstein's report says Plaintiff: (1) can occasionally lift/carry less than 10 pounds; (2) cannot lift/carry 10 pounds or more; (3) can stand and/or walk (with normal breaks) for less than two hours in a 8-hour work day; (4) can sit less than six hours in a 8-hour work day; (5) cannot operate foot/leg controls; (6) can repeatedly grasp, reach, pull, and manipulate with both

hands/arms; and (7) does not have mental limitations.  Tr. 202.

The ALJ asked the VE if there is work Plaintiff could perform based on Dr. Feinstein's RFC determination.  Tr. 414.  The VE testified that if Plaintiff has skills transferrable to business management and administrative positions, Dr. Feinstein's RFC would be consistent with employment as an inventory clerk, business clerk, and production clerk at the sedentary level.  Tr. 415.

### 2.      September 28, 2006 Hearing

Following the June 8th hearing, the VE read documents from Plaintiff's legal proceeding that shed light on the nature of Plaintiff's candy manufacturing company.  Tr. 419-420.  The VE discovered that Plaintiff worked numerous hours at the candy store and handled many of the financial aspects of the business.  Tr. 421.

Assuming Plaintiff could perform work that did not require lifting more than 10 pounds, does not require Plaintiff to be on his feet for more than six out of eight hours, and allows Plaintiff to sit for two out of eight hours, the VE believed Plaintiff could perform semi-skilled occupations at the light exertional level, including warehouse or packaging supervisor (approximately 5,600 jobs available in the metropolitan area and 11,000 jobs available in Michigan), and production supervisor (approximately 24,000 jobs available in Michigan).  Tr. 428-429, 432.

### 3.      February 7, 2007 Decision

The ALJ determined that Plaintiff's dysthymic disorder, herniated disc, and hypertension were a "severe" combination of impairments based on the requirement in 20 C.F.R. §404.1520(c).  Nonetheless, the ALJ determined that Plaintiff does not have

an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  He found Plaintiff lacked credibility and concluded that Plaintiff retains the RFC to perform work that does not require lifting more than 10 pounds, does not require Plaintiff to be on his feet more than six out of eight hours, and allows him to sit for two out of eight hours.

The ALJ found Plaintiff has past relevant work experience as the owner/manager of a candy manufacturing company, candy store, and bar.  The ALJ found there are a significant number of jobs in the national economy Plaintiff can perform.  From this, the ALJ concluded Plaintiff was not under a "disability" as defined in the Social Security Act.

### C.    Magistrate's Recommendation

The Magistrate recommends the Court uphold the ALJ's decision.  She says:  (1) the ALJ's findings regarding Plaintiff's mental limitations are supported by substantial evidence; (2) substantial evidence supports the ALJ's determination that Plaintiff's allegations, including those of disabling pain, are not credible; (3) the ALJ's RFC finding is supported by substantial evidence; (4) the hypothetical incorporated the limitations the ALJ found credible and supported by the record; (5) the ALJ properly relied on the VE's testimony; and (6) Plaintiff is not disabled despite his advanced age.

## V.    PLAINTIFF'S OBJECTIONS AND ANALYSIS

Plaintiff seeks reversal or remand.  He says: (A) the Magistrate reclassified the ALJ's findings; (B) the ALJ did not properly assess his RFC; (C) the ALJ did not properly evaluate the severity of his mental impairment; (D) the hypothetical was flawed; (E) he is disabled under 20 C.F.R. §404.1568(d)(4); (F) the VE's testimony was erroneous;

and (G) the ALJ's credibility finding is erroneous.

Defendant did not respond.

## A.    Reclassification of the ALJ's Findings

The ALJ said:

If the claimant had the residual functional capacity to perform the full
range of light exertional work, a finding of "not disabled" would be directed
by Medical-Vocational Rule 201.15.  However, the claimant's ability to
perform all or substantially all of the requirements of this level of work has
been impeded by additional limitations.  To determine the extent to which
these limitations erode the unskilled sedentary occupational base, the
Administrative Law Judge asked the vocational expert whether jobs exist
in the national economy for [a] claimant with the residual functional
capacity indicated above.

Tr. 25.

The Magistrate said:

The ALJ's reference in his decision to "the unskilled sedentary
occupational base," appears to be a misstatement which is harmless error
where the ALJ presented a hypothetical to the VE which incorporated
Plaintiff's RFC and limitations, the VE provided testimony and a response
based on the same on which the ALJ relied and the findings are otherwise
consistent with Plaintiff's ability to perform the light level jobs with
sedentary lifting, to which the VE testified.

Magistrate's Recommendation, p.28 n.1.

Plaintiff says the Magistrate reclassified the ALJ's decision, and this impropriety

casts into doubt whether there is substantial evidence to support the ALJ's decision.

The Magistrate's opinion that the ALJ made a harmless error is immaterial to the

Court's determination of whether the ALJ's decision exceeds his statutory authority or is

arbitrary and capricious.  The Court will consider Plaintiff's substantive objections to

make that determination.

## B.    The ALJ's Assessment of Plaintiff's RFC

8

### 1.   Consideration of Plaintiff's Dysthymic Disorder in the RFC Assessment

Plaintiff says that while the ALJ found his dysthymic disorder "severe," the ALJ's RFC assessment only included his herniated disc limitation – not his dysthymic disorder. Relying on the Tenth Circuit, Plaintiff says the ALJ must include "severe" mental impairments in his RFC assessment. *See e.g.*, *Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991) ("once a mental impairment is considered to be severe, it must be included in the [RFC] assessment[.]").

The Court disagrees with Plaintiff's argument that the ALJ's RFC determination was improper.

First, the ALJ did not find Plaintiff's dysthymic disorder, alone, was a "severe" impairment. Instead, the ALJ found Plaintiff's dysthymic disorder, herniated disc, and hypertension was a "severe *combination* of impairments." (Emphasis added).

Second, the ALJ considered Plaintiff's dysthymic disorder in his RFC assessment. For example, the ALJ said:

> The claimant . . . alleges that he is disabled due to mental illness [and] paranoia[.] . . . As a result of these conditions, the claimant alleges that he suffers from memory impairment, difficulty in maintaining concentration, illogical thinking, being unable to remember new information, . . . [and] sudden crying or thinking disturbances and that as a result he is unable to work.
>
> .    .    .
>
> Records from Franklin Medical Consultants reveal that the claimant was seen on January 2, 2004. The office note indicates that the claimant's medication was Zoloft[.] Two clinical impressions were made, hypertension and the other was depression.
>
> .    .    .

9

Regarding the claimant's mental health treatment, the record reveals that the claimant presented to Oakland Psychological Clinic, P.C. for a one-hour comprehensive assessment performed by Sally Cahill, M.S.W. on February 5, 2004.  The claimant's chief complaints were reported as depressed mood, depressed energy, hopelessness, guilt, anxiousness, grief, concomitant medical condition, family problems and work problems. According to the report, the claimant indicated that he had been depressed for the past year and that he had difficulty concentrating.  Ms. Cahill reported that the claimant was very depressed and wept throughout the session.  The report indicated that the claimant was married for thirty-two years and was recently divorced three months prior.  The report also indicated that the claimant's two sisters had died within the last year. According to the claimant's report[,] he had lost ten pounds in the previous year.  The claimant reported great shame over his legal problems.

.    .    .

The claimant reported passive thoughts of suicide to end his emotional pain. . . .  According to Ms. Cahill, the claimant['s] . . . mood was depressed and this thought process was lucid/coherent.  Ms. Cahill also reported that the claimant's thought content was normal; he was fully oriented; his memory was intact; he was of average intelligence and his abstraction, judgment and insight were all intact.  The claimant reported that he was only able to sleep two hours a night and that he had a poor appetite. . . .  Ms. Cahill provided the following diagnostic summary: Axis I – dysthymic disorder, rule out major depression[.]

.    .    .

On October 22, 2002, the claimant presented for a psychiatric assessment with Oakland Psychological Clinic. . . .  The claimant's mood was reported as anxious, dysphoric; his affect was constricted/restricted; he had no current suicidal ideation and no perceptual disturbances.  The claimant's diagnoses were dysthymic disorder, rule out major depression[.]

On February 5, 2004, a discharge summary and aftercare plan was completed by Ms. Cahill of Oakland Psychological Clinic.  The claimant's initial and final diagnoses were reported as being the same and the Dx Code was listed as 396.32 which, according to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision is major depressive disorder, recurrent, moderate. . . .  According to Ms. Cahill, the claimant complained often of feeling suicidal.  The claimant's primary problem was listed as depression and his condition was reported as improved.

10

Tr. 18-22.

Further, the ALJ considered the April 5, 2005 Medical Examination Report from Dr. Feinstein that said Plaintiff's current diagnoses included depression. Dr. Feinstein did not believe Plaintiff had mental limitations. Tr. 19-20.

Finally, the ALJ did not include Plaintiff's dysthymic disorder in his RFC determination because he found Plaintiff's credibility was undermined by his behavior:

> the claimant's behavior throughout the period this matter has been before the undersigned reveals an individual who is quite apt and is able to concentrate and focus, such that he is able to communicate by letter and telephone on a rather consistent and regular basis, to bring to the attention of the undersigned and his staff, issues which according to him, are deficiencies and errors in the processing and disposition of his claim.

Tr. 23.

The Court cannot make credibility determinations, *See Bogle*, 998 F.2d at 347, and the ALJ's decision not to include Plaintiff's dysthymic disorder in the RFC determination did not exceed statutory authority nor was it arbitrary and capricious.

Plaintiff's objection that the ALJ did not consider his dysthymic disorder in the RFC assessment is overruled.

### 2.       Consideration of Plaintiff's RFC at Steps Four and Five

Plaintiff says the ALJ violated SSR 96-8p by failing to consider his RFC at steps four and five. *See* SSR 96-8p: "RFC is an issue only at steps 4 and 5 of the sequential evaluation process."

At step four of the sequential evaluation process, Plaintiff must prove he does not have the RFC to perform past work. *See Jones*, 336 F.3d at 474. The ALJ complied with SSR 96-8p at step four when he concluded:

11

> The claimant is capable of performing jobs that were encompassed in his past relevant work which was ownership of various enterprises which included the owner/manager of a candy company and/or a candy store and a bar. *This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.*

Tr. 24 (emphasis added).

At step five of the sequential evaluation process, the Commissioner has the burden to show there is other work available in the economy that the claimant can perform. *See* 20 C.F.R. §404.1520(g). The ALJ complied with SSR 96-8p at step five when he said:

> Considering the claimant's age, education, work experience, *and residual functional capacity*, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

Tr. 25 (emphasis added).

Plaintiff's objection that the ALJ did not consider his RFC at steps four and five of the sequential evaluation process is overruled.

### C.    20 C.F.R. §404.1520a

20 C.F.R. §404.1520a outlines a special procedure the Commissioner must follow.

> Under this procedure, the Commissioner must first make clinical findings, i.e., the "A" criteria, as to whether the claimant has a medically determinable mental disorder specified in one of eight diagnostic categories defined in the regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A. Then the Commissioner must measure the severity of any mental disorder; that is, its impact on the applicant's ability to work. This is assessed in terms of a prescribed list of functional restrictions associated with mental disorders, i.e, the "B" criteria.

> The "B" criteria identify[sic] four areas which are considered essential to the ability to work. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00C. The first area is "activities of daily living." This area requires the Commissioner to determine the claimant's ability to clean, shop, cook, take public

transportation, maintain a residence and pay bills. (*Id.*) Under the second criterion, "social functioning," the Commissioner must determine whether the claimant can interact appropriately and communicate effectively and clearly with others. (*Id.*) The third function, "concentration, persistence and pace," refers to the claimant's ability to sustain focused attention sufficiently long to permit the timely completion of tasks found in work settings. (*Id.*) The final area, that of "deterioration or decompensation in work or work-like settings," refers to the claimant's ability to tolerate increased mental demands associated with competitive work. (*Id.*)

*Nance v. Comm'r of Soc. Sec.*, 2008 WL 2064559 at *6 (E.D. Mich. April 24, 2008).

Plaintiff says the ALJ did not evaluate the severity of his mental impairment using the "B" criteria.

While the ALJ mentioned that "[t]he severity of any mental impairment is measured by assessing functional limitations under four broad categories of functioning: activities of daily living; social functioning, concentration, persistence or pace; and episodes of decompensation," he did not assess the four broad categories as they relate to Plaintiff.

However, it would be difficult for the ALJ to assess the "B" criteria without Plaintiff's appearance at the scheduled hearings. While Plaintiff claims he: (1) takes public transportation when he goes outside; (2) can pay bills and handle a savings account; and (3) cannot do chores, socialize, shop, or prepare meals, Plaintiff's presence would allow the ALJ to inquire further about Plaintiff's claims. The questions posed to Plaintiff could have a positive or negative impact on Plaintiff's request for benefits.

In addition, Plaintiff's presence would allow the ALJ to determine whether Plaintiff can interact appropriately, communicate effectively and clearly with others, and sustain focused attention sufficiently long to permit the timely completion of tasks found in work

13

settings.

Indeed, the ALJ said:

notwithstanding [Plaintiff's] request for an on the record decision, the undersigned . . . determined that a hearing was necessary for further development regarding the claimant's past relevant work and whether additional medical evidence was necessary.  The claimant was advised that, should he not appear at the hearing, adverse presumptions regarding his credibility and the weight of the evidence could be made.

.    .    .

Based upon the totality of the evidence available . . ., the undersigned was of the opinion that the claimant's appearance was essential to a determination in this matter[.]

Tr. 12.

Based on Plaintiff's failure to appear at the scheduled hearings, participate in the required consultative internal medicine and mental status evaluations, and his failure to provide the name and address of his primary treating physician so the ALJ could schedule a consultative examination with that individual (at Plaintiff's request), the ALJ did not exceed his statutory authority by failing to assess the "B" criteria, nor was the ALJ's failure to assess the "B" criteria arbitrary and capricious.

Plaintiff's objection that the ALJ did not assess the severity of his mental impairment is overruled.

**D.    Flawed Hypothetical**

Plaintiff says the hypothetical was flawed because it did not incorporate his dysthymic disorder, a mental limitation the ALJ found was "severe."  *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) ("[t]he hypothetical question posed to a VE for purposes of determining whether [Plaintiff] can perform other work . . .

14

should be a . . . complete assessment of [his] . . . mental state and should include an

'accurate [] portray[al] [of his] individual . . . mental impairment[s]'") (quoting *Varley*, 820

F.2d at 779).

The Court disagrees.

> "The rule that a hypothetical question must incorporate all of the claimant's
> . . . mental limitations does not divest the ALJ of his . . . obligation to
> assess credibility and determine the facts." *Redfield v. Comm'r of Soc.
> Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005). In fashioning a
> hypothetical question to be posed to a vocational expert, the ALJ is
> required to incorporate only those limitations that he accepts as credible.
> *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993). An ALJ is
> not required to accept a claimant's subjective complaints, and "can
> present a hypothetical to the VE on the basis of his own assessment if he
> reasonably deems the claimant's testimony to be inaccurate." *Jones v.
> Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

*Griffeth v. Comm'r of Soc. Sec.*, 2007 WL 444808 at **4 (6th Cir. Feb. 9, 2007).

Because the ALJ concluded that Plaintiff's allegations regarding his mental

condition were not credible, the ALJ did not exceed his statutory authority by failing to

include Plaintiff's dysthymic disorder in the hypothetical, nor is his failure to do so

arbitrary and capricious.

Plaintiff's objection that the hypothetical was flawed is overruled.

**E.      20 C.F.R. §404.1568(d)(4)**

Plaintiff says his advanced age, severe impairments, and limitation to unskilled

sedentary work requires a finding of disabled. *See* 20 C.F.R. §404.1568(d)(4):

> If you are of advanced age (age 55 or older), and you have a severe
> impairment(s) that limits you to sedentary or light work, we will find that
> you cannot make an adjustment to other work unless you have skills that
> you can transfer to other skilled or semiskilled work (or you have recently
> completed education which provides for direct entry into skilled work) that
> you can do despite your impairment(s). We will decide if you have
> transferable skills as follows. If you are of advanced age and you have a

15

severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.  (See § 404.1567(a) and § 201.00(f) of appendix 2.)  If you are of advanced age but have not attained age 60, and you have a severe impairment(s) that limits you to no more than light work, we will apply the rules in paragraphs (d)(1) through (d)(3) of this section to decide if you have skills that are transferable to skilled or semiskilled light work (see § 404.1567(b)).

In reaching his conclusion that Plaintiff is not disabled, the ALJ relied on the VE's testimony that Plaintiff has skills he could transfer to other semi-skilled work.  The ALJ's disability finding was supported by substantial evidence.  *See Varley*, 820 F.2d at 779 (the Commissioner may use VE testimony to make a finding that Plaintiff has the vocational qualifications to perform specific jobs).

The Court overrules Plaintiff's objection that 20 C.F.R. §404.1568(d)(4) requires a finding of disabled.

### F.    The VE's Testimony

Plaintiff says that while the ALJ's decision limits Plaintiff to unskilled occupations, the VE provided the ALJ a list of semi-skilled occupations Plaintiff could perform. Plaintiff says the VE's testimony is erroneous.

The Court disagrees.

The ALJ's decision does not limit Plaintiff to unskilled occupations; the ALJ simply says to determine the extent to which Plaintiff's limitations erode the unskilled sedentary occupational base, he asked the VE whether jobs exist in the national economy for a claimant with Plaintiff's RFC.  The VE's testimony was proper.

The Court overrules Plaintiff's objection that the VE's testimony is erroneous.

16

G.     **Credibility Determination**

1.     **SSR 96-7p and 20 C.F.R. §404.1529(c)(3)**

a.     **SSR 96-7p**

As part of his credibility determination, the ALJ said:

> The claimant has consistently insisted that he is unable to attend a
> hearing, yet, a report dated June 8, 2006, from the State of Michigan
> Department of Corrections, Oakland County Circuit Court Probation Office
> in Troy, Michigan indicates that the claimant reports to his probation officer
> monthly as instructed and that he is in compliance with the terms and
> conditions of his probation.  The claimant represents to the undersigned
> that he is unable, for medical reasons, to attend a hearing to make a
> determination regarding his allegations of disability, yet he is able to
> attend monthly court ordered probation appointments and maintain
> compliance with the terms and conditions of his probation (i.e. attend court
> ordered psychological treatment).  The claimant's allegations in this regard
> are inconsistent and lack any support from either the medical evidence of
> record or from the claimant's own behavior and activity as evidenced by
> the probation report.

Tr. 23

Plaintiff says the ALJ's credibility finding violates SSR 96-7p because it was

based on the ALJ's intuition instead of medical evidence.  *See* SSR 96-7p:

> [T]he adjudicator must evaluate the intensity, persistence, and limiting
> effects of the individual's symptoms to determine the extent to which the
> symptoms limit the individual's ability to do basic work activities.  For this
> purpose, whenever the individual's statements about the intensity,
> persistence, or functionally limiting effects of pain or other symptoms are
> not substantiated by objective medical evidence, the adjudicator must
> make a finding on the credibility of the individual's statements based on a
> consideration of the entire case record.  This includes the medical signs
> and laboratory findings, the individual's own statements about the
> symptoms, any statements and other information provided by treating or
> examining physicians or psychologists and other persons about the
> symptoms and how they affect the individual, and any other relevant
> evidence in the case record.  This requirement for a finding on the
> credibility of the individual's statements about symptoms and their effects
> is reflected in 20 C.F.R. 404.1529(c)(4) and 416.929(c)(4).

Importantly, SSR 96-7p says, "the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the *entire case record*." (Emphasis added). Because the ALJ can consider all relevant evidence, it was proper for the ALJ to rely on the June 8th report from the Oakland County Circuit Court Probation Office to support his finding that Plaintiff's reasons for not attending the scheduled hearings were not credible.

Plaintiff's objection that the ALJ violated SSR 96-7p is overruled.

### b.    20 C.F.R. §404.1529(c)(3)

Plaintiff says the ALJ did not address the factors outlined in 20 C.F.R. §404.1529(c)(3):

Factors relevant to your symptoms, such as pain, which we will consider include:

(i)     Your daily activities;

(ii)    The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)    Any measure you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Because the ALJ could not adequately assess the factors outlined in 20 C.F.R.

18

§404.1529(c)(3) without Plaintiff's appearance at the scheduled hearings, Plaintiff's

objection that the ALJ did not assess these factors is overruled.

### 2.  Verification of Social Security Income to the Wayne County Probation Department

A letter dated June 8, 2006 to ALJ Kalt from Anne Baker, an Oakland County

Probation Supervisor, says:

> We have received your request for information regarding Mr. Sutton's probation supervision.  Mr. Sutton has been under supervision in Oakland County since February 2, 2004 for a Wayne County Probation sentence.

> Mr. Sutton is not currently working as he has been receiving Social Security income as indicated by the Wayne County Probation agent.  As of December 2003, the offender provided verification of Social Security income to the Wayne County Probation Department.

> In his credibility determination, the ALJ said:

> Another disturbing indication of the claimant's credulity is the fact that, according to the probation report referenced earlier, the claimant was not currently working, as provided under the terms of his probation, because "he has been receiving Social Security income as indicated by the Wayne County Probation agent" and "[a]s of December 2003, the offender [Plaintiff] provided verification of Social Security income to the Wayne County Probation Department."  The claimant is not currently and was not receiving Social Security income in September 2003. . . .  No such verification could exist as the claimant's payments from the Administration stopped as of the July 16, 2003[] decision issued by Judge Varga.

Tr. 23.

According to Plaintiff, the probation officer's representation that Plaintiff provided

verification that he was receiving Social Security income in December 2003 is incorrect.

Plaintiff says he provided the probation officer proof that he stopped receiving Social

Security payments on July 16, 2003.

In a letter dated July 20, 2006, the ALJ gave Plaintiff an opportunity to provide a

copy of the verification he gave the probation officer:

> Enclosed is a copy of the report we received from you probation officer as requested.  In this report, Ms. Baker, stated that you verified that you have been receiving Social Security income since December 2003[.] I am requesting that you send a copy of this verification to us as this information does not appear in your file.

Based on Plaintiff's failure to provide the requested document, his objection that

the ALJ improperly relied on the probation officer's representation in his credibility

determination is overruled.

### 3.      The ALJ's Reliance on ALJ Varga's Decision

As part of his credibility determination, the ALJ said:

> As evidenced by his submission of his Social Security Statement dated March 6, 2006, the claimant insists and alleges, to everyone, including his medical providers, that he last worked and engaged in [substantial gainful activity] in 1983 and the record, specifically, the decision of Judge Varga establishes otherwise.  The claimant was found to have engaged in [substantial gainful activity] from 1983 through at least 1997.

Tr. 24.

Relying on *Sutton v. Comm'r of Soc. Sec.*, No. 06-2100 (6th Cir. March 26,

2007), Plaintiff says the ALJ improperly relied on ALJ Varga's decision in making his

credibility determination.  Plaintiff says the *Sutton* Court overruled ALJ Varga's decision

when it held that he engaged in gainful activity from 1983 to 1997– not *substantial*

gainful activity.

The Sixth Circuit held that Plaintiff engaged in substantial gainful activity from

1983 to 1997.  *See Sutton*, No. 06-2100, slip op. at 3 (6th Cir. March 26, 2007):

> Sutton argues that the Commissioner and the district court mischaracterized the evidence concerning his financial status.  He states that both should have relied on the gross income of his company.  Sutton's arguments do not negate the fact that in his bankruptcy petition

20

and at his bankruptcy hearing, Sutton admitted receiving income for work as the CEO of his candy company.  In addition, Sutton conceded that he was actively and consistently involved in acquiring negotiated contracts for his company from 1983 though the time of the bankruptcy hearing.  He also stated that he had more than $45,000 in salary in 1995 and 1996.  A person with this amount of personal income from work is deemed by the regulations to be engaged in substantial gainful employment.  *See* 20 C.F.R. 404.1574, 404.974.  Thus, Sutton's admissions support the Commissioner's conclusion that Sutton engaged in gainful work activity from 1983 through 1997.

Plaintiff's objection that the ALJ improperly relied on ALJ Varga's decision is overruled.

## VI.    CONCLUSION

The Court **ADOPTS** the Magistrate's Report and Recommendation.  The Court **GRANTS** Defendant's motion, and **DENIES** Plaintiff's motion.

**IT IS ORDERED**.

S/Victoria A. Roberts_____
Victoria A. Roberts
United States District Judge

Dated:  September 25, 2009

The undersigned certifies that a copy of this document was served on the attorneys of record and David Sutton Jr. by electronic means or U.S. Mail on September 25, 2009.

s/Carol A. Pinegar_____
Deputy Clerk